BOARD OF TRADE OF GRAND HAVEN *v*. DE'BRUYN.

CONTRACTS—CANCELLATION—MEETING OF MINDS.

> On a bill to cancel a contract by which a board of trade agreed to extend certain favors to defendants to induce them to locate their factory in complainant's city, evidence examined, and *held* that the purpose of defendants to remove only a portion of their works was not in view of the parties at the time of making the contract, and that it should be canceled.

Appeal from Ottawa; Padgham, J. Submitted October 5, 1904. (Docket No. 6.) Decided November 15, 1904.

Bill by the Board of Trade of Grand Haven against John C. De Bruyn, Nicholas Bosch, and John Boda, doing business as the Valley City Machine Works, for the cancellation of a contract. From a decree for complainants, defendants appeal. Affirmed.

*George A. Farr*, for complainants.

*Frank A. Rodgers*, for defendants.

MOORE, C. J. The circuit judge made a decree in favor of the complainants, declaring a contract dated the 13th day of November, 1900, purporting to be made between the complainants and said defendants, null and void. From this decree the defendants have brought the case here by appeal.

It is the claim of defendants that there is no ambiguity in the contract; that the parties to it knew what it contained when it was signed; that, if Mr. Watson and Mr. Thielman did not have the authority to enter into this contract and bind the other complainants, as they represented to the defendants, then they would be liable to the defendants for any damage defendants suffered by reason of it, and that the bill should be dismissed.

The testimony is conflicting, but a careful perusal of the

record satisfies us, as it doubtless did the circuit judge, of the existence of the following facts : Some time prior to November, 1900, the city of Grand Haven raised a sum of money to be expended in the effort to get new business enterprises to settle in Grand Haven. A board of trade, so called, was brought into existence, through whom and a board of five trustees the money so raised was to be expended. The complainants constitute that board of trade. They elected a president and secretary. The officers of the association learned that the defendants, doing business at Grand Rapids under the name of the Valley City Machine. Works, owing to the necessity of having more room, had expressed a desire to establish their business in a new location. Mr. Watson, president of the board of trade, and Mr. Thielman, secretary, entered into negotiations for the removal of the plant to Grand Haven. These men say the negotiations proceeded upon the theory that the entire plant was to be removed to Grand Haven, and they are corroborated by other witnesses. The defendants also submitted the following to complainants :

" TO THE HON. BOARD OF TRADE,
                                " City.

" *Gentlemen:* In order to locate our business here, we respectfully submit that you assist us by donating the land known as the Blecker Place, fronting on First St., namely three lots, sixty six foot front, plus the three cornered strip back of same, between the railroad tracks. $5,000 cash to be used in erecting and improving necessary buildings. Also make us loan in cash," etc.

On the 19th day of October Mr. Bosch wrote to one of the complainants as follows :

" Mr. GEORGE W. MCBRIDE,
                        "Grand Haven, Mich.

" *Dear Sir:* In the event of our firm moving to your city it is my best judgment that it will be to my interest to dispose of our home here and either rent or buy again in your city. It occurs to me that you would be the right man to confer with in this matter. * * * Your answer will be appreciated."

Mr. Bosch also sent a letter to Mr. Watson containing, among other things, the following :

" October 22, 1900.

" Mr. D. O. WATSON:

"In regard to your favor of the 20th inst., which arrived in this p. m.'s mail, would say we hardly know what answer to give you, because, to begin with, we cannot give you any assurance as to the number of men to be employed, but we will say that if we had reason to believe that in coming to your town we could not continue the steady gait of increase in business we now enjoy, we would not make any change. Consequently all we can give you on that point is what you can for yourselves figure out, basing it on the ratio of increase from October, 1895, until the present time, and add to that what in your judgment would add on account of the advantage gained by being in your town, and might add an advantage over the past years on account of experience gained. Up to 1895 the writer had never, to his knowledge, seen the inside of a machine shop. We then continued business against odds that offered very little encouragement for success. Our equipment was small and incomplete, and mortgaged for about all it was worth. And the small weekly pay-roll of a little over $50 was met with a struggle. We are not afraid to come to Grand Haven, but can guarantee you only this. That if we do come, it is with the confidence of success, and we see no real reason with the foundry added, why we could not in a short time double our present force and continue to increase."

Mr. Watson and Mr. Thielman say that with no other thought in mind than that the entire plant was to be moved to Grand Haven they entered into a contract, which is the basis of this controversy, the material parts of which are as follows:

"This agreement made and entered into this 13th day of November, A. D. 1900, by and between John C. De Bruyn, Nicholas Bosch and John Boda, doing business and composing the name of the Valley City Machine Works of the city of Grand Rapids, Kent county, Michigan, party of the first part, and the Board of Trade of the city of Grand Haven, Ottawa county, Michigan, a corporation, by Dudley O. Watson and William Thielman, duly authorized to represent and act and enter into this covenant for and in behalf of said Board of Trade, as appears by a resolution duly adopted at a meeting of said Board of Trade on or about November 8th, A. D. 1900, party of the second part,

"*Witnesseth:* In consideration of the premises and of the agreement of the said parties herein expressed. The said party of the second part hereby promises and agrees to purchase and hold title to the property on First street, in the city of Grand Haven, Ottawa county, Michigan. * * *

"The said second party further agrees to build and erect on said premises a machine shop, dimensions as follows: 50 feet in width by 100 feet in depth and 16 feet in height, with a concrete floor covered with pine flooring, and wooded truss roof with iron on outside, also an engine and boiler room 20 feet in width by 35 feet in length and 16 feet high, with a concrete floor. The whole to be built and completed according to plans and specifications furnished by J. H. Daverman & Son of Grand Rapids, Michigan.

"The said second party further agrees to. have said buildings ready for occupancy on or before the 1st day of April, A. D. 1901.

"The said second party further agrees to make a loan to said first party in the sum of fifteen hundred (1,500) dollars, to be paid back by said first party to said second party. * * *

"The said first party in consideration of the premises, hereby promises and agrees that on the performance of the conditions and promises by said second party hereinbefore set forth, the said first party will occupy the buildings when completed and operate and use the said buildings and premises for the purpose of manufacturing machinery and such other work incident thereto. * * *

"It is agreed that when said first party begins operations upon said premises that they will organize a company to be known as the Western Michigan Tool Works. * * *

"In witness whereof the said parties have hereunto set their hands the day and year above written.

                    "JOHN C. DE BRUYN,
                    "NICHOLAS BOSCH,
                    "JOHN BODA,

"Composing the Members of the Valley City Machine Works of Grand Rapids, Mich.

"BOARD OF TRADE OF THE CITY OF GRAND HAVEN, MICH., by

                    "DUDLEY O. WATSON,
                    "WILLIAM THIELMAN."

Some modifications were added to the contract under date of December 5th, which it is not necessary to state here. When this contract was drawn, Mr. Watson and Mr. Thielman supposed the board of trade was incorporated. It turned out upon the trial it was not. When the plans for the building were received, they called for a more expensive building than Mr. Watson and Mr. Thielman expected, and there was some modification made December 5th, and some delay growing out of the situation ensued. The following letter was sent by defendants:

"GRAND RAPIDS, Jan. 15, 1901.
"Mr. D. O. WATSON.

"*Dear Sir:* From our conference with you the last time you were here relative to Grand Haven Board of Trade and ourselves, we expected some answer from you by this time. I write for such information as you can give us. We are obliged to give Mr. Ranniville, from whom we rent, an answer what we intend to do about staying in present quarters. To sign a lease now might cause us considerable trouble when we get ready to move."

Soon after this letter was sent some of the complainants learned it was not the intention of the defendants to remove their entire plant to Grand Haven, and upon inquiry of defendants it developed that they intended only to move that portion of their plant engaged in the manufacturing of ironworking machinery. This portion of their business began, according to the testimony of defendants upon the trial, in the spring or summer of 1900. Some attempt was made to harmonize the differences between the parties, which failed. No part of the plant was removed to Grand Haven, but a part of it was removed to Holland.

In October, 1901, Daverman & Daverman sued Mr. Watson and Mr. Thielman, claiming $400 for preparing the plans for the buildings mentioned in the contract. The complainants, in January, 1902, filed this bill of complaint, setting out in detail what has been here recited, and also averred that defendants threatened to sue com-

plainants for a breach of said contract, and asked that it might be canceled.

It is clear from what we have already said that the only purpose of complainants in causing negotiations to be entered into with defendants was to secure the removal of their plant to Grand Haven. It is equally clear that the only contract which Mr. Watson and Mr. Thielman were authorized to make, and the only one they supposed they were making, was one which should secure the removal of the plant of defendants from the city of Grand Rapids to the city of Grand Haven. The construction now sought to be given to this contract is not such a one as complainants authorized to be made, nor such as defendants had any reason to suppose Mr. Watson and Mr. Thielman were authorized to make, and it should be canceled.

The decree is affirmed.

The other Justices concurred.